## Shellenberger's Estate.

*Decedents' estates—Findings of fact—Appeals.*

Where there is ample evidence to support the findings of fact by the auditing judge, that certain premiums were paid by the claimant on the insurance policies of the decedent, and at his request, the conclusions of the orphans' court, and the allowance of the claim will not be reversed on appeal.

Argued Dec. 6, 1918. Appeal, No. 300, Oct. T., 1918, by Benjamin G. Shellenberger, from the final decree of the Orphans' Court of Philadelphia Co., July T., 1917, No. 343, dismissing exceptions to adjudication and readjudication in the Estate of John F. Shellenberger, deceased. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER and WILLIAMS, JJ. Affirmed.

Exceptions to adjudication and readjudication.

LAMORELLE, J., filed the following opinion in readjudication, which was subsequently affirmed by the court in banc:

A further hearing was had April 8, 1918, pursuant to an opinion of the court, handed down December 26, 1917, by which the matter was referred back to the auditing judge "to take proof of the execution and delivery of the checks and receipts."

The auditing judge sees no reason to modify anything that he has heretofore said or to change any ruling that he has made. He has heard testimony and now spreads upon the record what he believes to be a fairly accurate analysis thereof.

John Humphreys, secretary and treasurer of The Penn Mutual Life Insurance Company, identified a series of receipts, beginning October 24, 1914, on policy No. 81974 on the life of John F. Shellenberger as being the regular receipts of his company and on the form used by his company. He also identified the signature of J. Frank

Shellenberger, Jr., who is a son of John F. Shellenberger, the decedent, to a series of checks. While, of course, he did not in person receive the checks, a strong presumption arises from the dates of the checks and from the dates of the receipts that these particular checks paid these particular premiums. Mr. Humphreys's testimony was based upon his examination of his company's books, and, had any other check or cash paid the premiums, the books would show double, and not single, payments. Moreover, both the checks and the receipts were produced by the claimant himself, and although the accountant, Benjamin G. Shellenberger, was called to the stand, he made no contention that the receipts were found among the decedent's effects. Mr. Rumsey strongly objected to his client's giving any testimony whatever, on the ground of interest, overlooking the fact that he was called by the other side.

The auditing judge knows of no law or any authority in Pennsylvania making an administrator incompetent when called by the opposite side in the matter of a claim against the estate, and now rules that he was competent to testify.

The attitude of Benjamin G. Shellenberger, represented by Mr. Rumsey, is shown by these extracts from the record:

"Q. Do you know anything about the payment of the premiums on the life of your father to The Penn Mutual Life Insurance Company and the Hartford Life Insurance Company of Hartford, Conn.? A. What do you mean by know anything? *I never saw them paid.* Q. Do you know whether or not they were paid? A. *I have no definite knowledge.*" (Italics are by the auditing judge.)

That they were paid by the claimant does not admit of moral doubt, for the representative of the one person who will himself benefit by the disallowance of the claim is on record as follows:

597, (1919).]          Opinion of Court below.

"By the Court: What is the objection to the claim of the insurance company?

"Mr. Rumsey: These premiums were probably paid, doubtless paid, in my judgment, by J. Frank Shellenberger, and a moral right is established, and under ordinary circumstances, I would not only have urged, but insisted upon the payment of the claim. We hold in our papers an obligation of Mr. J. Frank Shellenberger, which he gave his father more than six years ago for a thousand dollars. There had been prior payments, but that we have the written obligation for. He insists that he will not pay that.

"By the Court: Why don't you put it in evidence?

"Mr. Rumsey: I object that the proof of the payment is insufficient. I don't care to put it in. We cannot toll the Statutes of Limitations.

"Mr. Hyndman: Morally, there is no obligation on the part of Mr. J. Frank Shellenberger to pay this claim. As a matter of fact, there is an assignment of some kind, of which Mr. Rumsey will not allow me to make a copy. That assignment is worth something, and the property is still intact. There is no such thing here as a moral obligation. He promised to reimburse it; it is a legitimate claim against the estate. I cannot understand Mr. Rumsey's objection to it" (page 25 of the testimony taken at the first hearing).

At the second hearing, Mr. Rumsey and Mr. Deeter, while moving to strike out all the testimony given by Mr. Humphreys, agreed that his testimony as to the identification of the signature of J. Frank Shellenberger, Jr., the son, and of the receipts of the company was competent. The auditing judge refused to strike out all the testimony and granted both of the attorneys an exception.

Jane A. Hutchinson, who stated that she was engaged to be married to Benjamin G. Shellenberger, but not yet married to him, and, therefore, a competent witness at the time she gave her testimony, stated that she had

known the decedent and his wife, Amanda Shellenberger, for upwards of twelve years; that she was a frequent visitor at the house from the year 1906 to the time of the death, was there on an average twice a week and later most every night; and that sometime in the year 1914 she had a conversation with reference to the payment of the premiums on Mr. Shellenberger's life policy. It happened in the sitting room of No. 2037 North Fifteenth street. Mr. John F. Shellenberger said to his wife "he was glad that the question of the insurance premiums had been settled; that the payment of these premiums to the Hartford and Penn Mutual had worried him considerably"; and Mrs. Shellenberger replied, "Well, I am glad they are all settled." Mrs. Shellenberger complained that Frank had not given his parents any consideration, and Mr. Shellenberger replied, "Mother, I don't think that's quite fair, because Frank came up here and he offered to pay these premiums for me, and you know that is a considerable help"; and he further stated, "It is also for your interest, for, if I should die before you, you would not be without insurance." Mrs. Shellenberger replied, "I don't think Frank is doing any more than he ought, for, when he needed help, you know you loaned him a thousand dollars and you know he has never repaid it." This witness further testified to a conversation with J. Frank Shellenberger, Jr., the claimant, on Thanksgiving Day of 1916, when his mother died. This conversation also took place at 2037 North Fifteenth street. She and Frank were the only two present. She testified that he said to her, "I promised my father I would pay the premiums on the Hartford Life Insurance Company policy, and I did so, and I told my father I never expected him to repay it." Mr. Rumsey called this witness.

J. Frank Shellenberger, Jr., being called with reference to this conversation, stated it never took place as stated by the previous witness, and he denied most emphatically that any such conversation had ever taken

place so far as it related to his having ever agreed to pay the premiums as a gift.

The amount paid to The Penn Mutual Life Insurance Company is $160.38, and this claim, with interest, the auditing judge accordingly allows.

So far as the premiums to the other company, however, are concerned, the auditing judge is of the opinion that there is sufficient evidence to justify his award of the amount claimed for these premiums with interest. It must not be overlooked that in the conversation between John F. Shellenberger, the elder, and his wife, they referred to the premiums on the two policies; and that, at the first hearing, Samuel H. Tucker, an insurance broker, in business since 1872, knowing both the father and the son, testified that about the time the elder Shellenberger broke his leg he was very much worried about the payment of the premiums, his financial resources being reduced; that the Hartford Insurance Company had no provision in its policy for lending money to the insured; and that, after considerable talk, Tucker suggested that Frank, the son, would probably be able to help the father out, and that afterward Shellenberger told the witness he had gone to Frank and had borrowed the money from him, and he had continued paying his premiums, and requested a suggestion as to the proper way to reimburse Frank. The fact that Frank, the son, produced his cancelled checks and the receipts and that no evidence is offered that the receipts were ever in the possession of the administrator, and the fact that the first of the series of checks, that dated September 4, 1914, states on its face that it is to pay premiums on the life policy of John F. Shellenberger, offer strong presumptive evidence sufficient to justify the verdict of a jury and a finding by an auditing judge that Frank paid these premiums, and his claim to be reimbursed his advances to the Hartford Company, $436.80, with interest, is accordingly allowed.

The balance, principal, $1,068.50, composed as in the account set forth, with interest on deposits (less com-

mission) $15.57, and any and all further collections, and also less allowance for additional premium on bond, $10.66, and subject to the payment of $44.50, interest on note held by Jane E. Brooks, is awarded pro rata among the claims presented, that is to say, the bond, the two due bills and the advances for premiums, and payment and distribution is so decreed.

Counsel will prepare a schedule of distribution and certify that it is in conformity with this adjudication; if and when approved by the auditing judge, it is to be attached hereto and form part hereof.

*Error assigned* was the decree of the court dismissing exceptions to adjudication and readjudication.

*Horace M. Rumsey,* and with him *Joseph F. Englert,* for appellant.

*Thomas M. Hyndman,* for appellee.

OPINION BY HENDERSON, J., April 21, 1919:

The opinion of Judge LAMORELLE in the readjudication of the account contains a convincing statement of the reasons for allowing the claim of the appellee. The checks given by the latter and the receipts given by the insurance companies sustain such a relation to each other as to time and amount that no other reasonable conclusion can be drawn than that the checks were given in payment of the premiums due by John F. Shellenberger on his insurance policies, and this seems to be but faintly denied; indeed the testimony of Jane A. Hutchinson, a witness called in behalf of the appellant, corroborates the claim of the appellee that he provided the money to pay the premiums. The checks were drawn by him and the receipts and checks were produced by him at the audit. It is stated by the counsel for the appellant in the argument that the checks and receipts were not offered in evidence, but the record as exhibited in the

appendix to the appellant's paper-book shows on pages 32, 33 and 35 that they were offered in evidence and read, copies of the checks and receipts there being printed in full. There is also other evidence referred to in detail by the auditing judge tending to show that the premiums were paid by the appellee.

The other objection made to the claim is that if payments were made as asserted they were voluntary and therefore not recoverable. In respect to this defense the court has found that the payments were made at the request of the decedent, and there is evidence tending to show that he borrowed the money from his son for that purpose. The argument in support of the appeal does not convince us that the conclusion of the Orphans' Court was without sufficient evidence; on the contrary the weight of the evidence sustains it. The decree is affirmed and the appeal dismissed at the cost of the appellant.